[Sac. No. 3172.   In Bank.—June 20, 1922.]

W. E. BARRY, Appellant, v. L. G. BARTON et al., Respondents.

[1] PARTNERSHIP—ADMISSION OF THIRD PARTY—PROFITS—CONSTRUC-
TION OF CONTRACT.—Under an agreement between three persons
which provided that two of them were to advance the sum of
$10,000 for the purchase of a business and the third was to be
employed as manager for two years at a salary of $150 per month
and to be credited with one-third of the profits until the same
reached the sum of $3,333.33, when all of them should become
equal partners, the provision of the contract terminating the
latter's right in the profits in the event he should not remain in
the employment of the partnership had reference to a termination
caused by his fault or by agreement, and not to a wrongful dis-
charge without fault, in which latter event he was entitled to such
damages as he could show he suffered by reason of being wrong-
fully deprived of his prospective interest in the profits of the
business.

APPEAL from a judgment of the Superior Court of
Sacramento County.   Charles O. Busick, Judge.   Reversed.

The facts are stated in the opinion of the court.

Ralph H. Lewis for Appellant.

C. A. Bliss and Thomas B. Leeper for Respondents.

WILBUR, J.—Plaintiff brought this action to recover the
sum of $13,500 damages for a breach of contract.   De-
fendants had judgment on demurrer, and the plaintiff ap-
peals.   The breached contract is an exhibit to the complaint.
It is an agreement by Barry, Handlin, and Barton to form
a copartnership.   Handlin and Barton were to advance the
sum of $10,000 for the purchase of a wall-paper business
and were to constitute the copartnership until the plaintiff

Effect of sharing profits in addition to salary or other compensa-
tion as creating a partnership, notes, 18 L. R. A. (N. S.) 963;
L. R. A. 1918F, 801.

Agreement to share losses as essential to existence of partnership
relation, note, Ann. Cas. 1913B, 1335.

under the terms of the contract had secured an equal interest therein as a copartner. The plaintiff was to be manager of the business and receive $150 per month and to be credited with a third interest in the profits as hereafter stated. This third interest in the profits was to be carried on the books as the "Barry Reserve Fund." It was provided that when this fund amounted to $3,333.33 one-half of this fund should be paid to Handlin and one-half to Barton and thereupon the partnership should be composed of Barton, Handlin and Barry. The contract was entered into on the second day of June, 1919, and on the fourth day of October, 1919, the plaintiff was discharged and his further participation in the business was prevented by the defendants. Plaintiff alleges that at the time of his discharge the profits of the business amounted to $8,000. The defendants demurred to plaintiff's complaint generally and for lack of jurisdiction. The defendants' contention is in effect that plaintiff's employment was to continue for two years; that unless at the end of that term the Barry reserve fund then amounted to $3,333.33 or more plaintiff was not entitled to enter into the copartnership or to any part of the profits; that if in the meantime for any reason plaintiff ceased his connection with the business he was not entitled to any part of the profits, and upon this hypothesis claim the only injury sustained by reason of his discharge is the sum of one month's salary accruing between the date of discharge and the date when plaintiff secured other employment, and that this amount ($150) was not sufficient to give the superior court jurisdiction.

It will be observed that at the date of the discharge one-third of the profits amounted to $2,166.66 and that if the profits had been continued for another month at that rate one-third of the profits would have been $3,333.33. The contract provided:

"7. When said Barry Reserve Fund shall have amounted to Thirty-three Hundred Thirty-three and one-third Dollars ($3333–1–3), one-half thereof shall be paid to the party of the first part and one-half thereof to the party of the second part, and thereupon and thereafter the party of the third part shall be let into and become an equal partner with the parties of the first and second parts in said business, provided he shall have continued in the employ of

said partnership as hereinabove provided, and shall have during said time, in all matters and things, promoted and worked for the best interests of said partnership, and in all other particulars complied with his obligations and duties under this agreement.''

It is clear that Barry's third interest in the copartnership was to begin as soon as the profits amounted to $10,000, unless there are other provisions of the contract modifying paragraph 7. Paragraph 5 of the contract with relation to the profits is as follows:

''5. Upon the 1st day of January of each year after the signing of this agreement an inventory of said business shall be taken, and balance shall be struck, and the net profit of the previous year shall be ascertained and determined, and thereupon said profit shall be disposed of as follows:

''(a) One-third thereof shall be paid to the party of the first part.

''(b) One-third thereof shall be paid to the party of the second part.

''(c) One-third thereof shall be put in a fund to be known as 'Barry Reserve Fund'; said reserve fund shall be carried on said books as cash on hand, but the same may be used by said partnership for the purpose of carrying on said business, discounting bills, etc., provided, however, that before a balance shall be struck for the succeeding year said reserve fund shall be restored and be intact at the time of ascertaining the profit for such year.''

Paragraph 3 is as follows:

''3. The party of the third part shall be employed by said partnership at a salary of One Hundred and Fifty Dollars ($150) per month, beginning with the 1st day of June, 1919, and shall give his entire time and attention, and his best energy and efforts in promoting the welfare of said business and the interests of said partnership; and agrees to continue in such employment for a period of two years, and thereafter until this agreement has been fully. carried out, and has become an equal partner in said business enterprise as hereinafter provided.''

It is not necessary for us to determine whether if the profits had continued at the rate of $2,000 per month for another month the plaintiff would have been entitled to his partnership interest on November 4th or would have been compelled to have waited until the first of the next Janu-

ary, when the inventory was to be taken, subject to the postponement of his partnership interest in the event that during the period from November 4, 1919, to January 1, 1920, there were losses instead of profits. It is sufficiently clear from the paragraphs quoted that the plaintiff suffered a substantial damage by reason of the loss of his contingent interest in the profits of the business and that if his dismissal was wrongful he was entitled to such damages.

[1] The defendants claim that section 9 deprives plaintiff of any interest in the profits or in the Barry reserve fund in the event that his employment is terminated from any cause, even though such termination may have been wholly without his fault and wrongful on their part. We do not think that the contract is reasonably susceptible of such construction. There was a definite agreement that the plaintiff was to be employed for two years at $150 per month. It was also clear that he was to have one-third of the profits subject only to the contingency that he remain in the employment of the company and that such profits amount in the aggregate to $10,000. It is clearly not contemplated that the plaintiff should be penalized for the wrongful conduct of the defendants. That is to say, the termination of the employment referred to in subdivision 9 of the contract which terminates plaintiff's right in the profits must be caused by the fault of the plaintiff or by agreement. It is not a reasonable construction of the contract to hold that it was agreed that the defendants reserved the right to discharge the plaintiff at their whim at any time, and that this discharge might occur the day before an inventory is taken, which inventory would disclose that the plaintiff is then entitled to a third interest in the partnership. Plaintiff was entitled to such damages as he could show he suffered by reason of being wrongfully deprived of his prospective interest in the profits of the business. He alleges his damages at $15,000 and asks judgment for this amount and this brings the case within the jurisdiction of the superior court. The demurrer should have been overruled.

The judgment is reversed, with instructions to the trial court to overrule the demurrer to the complaint.

Lennon, J., Richards, J., *pro tem.*, Sloane, J., Lawlor, J., Shaw, C. J., and Shurtleff, J., concurred.